IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **BRENDA L. COTHRAN** | § | |
| | § | |
| **Plaintiff,** | § | **CASE NO. 3:08-CV-0785-O** |
| | § | |
| **v.** | § | |
| | § | |
| **JOHN E. POTTER, Postmaster** | § | |
| **General, United States Postal Service** | § | |
| | § | |
| **Defendant.** | § | |

<u>MEMORANDUM OPINION AND ORDER ON
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT</u>

Before the Court are Defendant's Motion for Summary Judgment (Doc. #25) with a Brief/Memorandum in Support (Doc. #26) and Appendix in Support (Doc. #27); Plaintiff's Response (Doc. #31), Brief/Memorandum in Support (Doc. #32) and Appendix in Support (Doc. #33); and, Plaintiff's Reply (Doc. #36) and Appendix in Support (Doc. #37).

For reasons set out below, the Court concludes that summary judgment should be **GRANTED**.

I.      <u>BACKGROUND</u>

Plaintiff Brenda Cothran ("Cothran") is an African-American who works for the United States Post Service ("USPS"). Def.'s App.  13, 16, 25, 111-113. She became an Injury Compensation Specialist within the USPS Dallas District's Injury Compensation Office in October, 2003. Def.'s App.  16-17. During the time pertinent to this lawsuit, she handled on-the-job injury claims from employees with names beginning with certain letters ("alpha files"). Def.'s App.  21, 30, 131. She also handled "third-party claims" involving on-the-job injuries

1

caused by persons who were not federal employees, becoming solely responsible for third-party claims in September, 2004. Def.'s App.  21-22, 43, 116, 126.

Angie Fuentes ("Fuentes") is an Hispanic-American USPS manager who has supervised Cothran at various times. Def.'s App.  23, 116, 125. Fuentes' immediate supervisor is Denise Cameron, an African-American. *See* Def.'s App. 116, 127, 165-167. Fuentes supervised seven other employees in addition to Cothran, of whom two others were African-American, three were Caucasian, one was Hispanic-American, and one was of Asian descent. Cothran contends Fuentes discriminated against her because of her race, and then retaliated against her when Cothran filed a complaint with the USPS's internal Equal Employment Opportunity office ("EEO"). Pl.'s Complaint ("Pl.'s Compl.")

The events giving rise to Cothran's causes of action are not disputed. The dispute is whether they occurred because of racial discrimination and retaliation by Fuentes against her. First, Cothran bases her racial discrimination claim on several instances of supervisory action. Pl.'s Compl. at 3-4. Second, Cothran bases her retaliation claim on the assertion that after she filed the EEO claim, Fuentes punished her through a performance evaluation and in the handling of her vacation and leave requests. *Id.* at 4-9. However, as explained below, Cothran fails to make a prima facie showing for either cause of action, and even if she did, she can not meet her burden in demonstrating a genuine issue exists about the whether the race neutral reasons offered by Defendant are pretextual.

The Court turns now to the legal standard against which to measure the evidence to which it has been directed by the parties.[1]

---

[1] Plaintiff has made five objections to evidence cited in Defendant's Brief. Def.'s Brief at 5. Objection Numbers 1-5 are overruled as being arguments regarding the evidence, which are taken into account, but do not provide legal reason to exclude the evidence. Objection 5 is granted on the basis of hearsay.

2

## II.   **LEGAL STANDARD**

"A party against whom relief is sought may move at any time, with or without supporting affidavits, for summary judgment on all or part of the claim." FED. R. CIV. P. 56(b). Summary judgment is proper when the pleadings and evidence on file show that no genuine issue exists as to any material fact and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986).  "[T]he substantive law will identify which facts are material." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Id.* The movant makes a showing that there is no genuine issue of material fact by informing the court of the basis of its motion and by identifying the portions of the record which reveal there are no genuine material fact issues. *Celotex Corp.,* 477 U.S at 323.  While all of the evidence must be viewed in a light most favorable to the motion's opponent, *Anderson*, 477 U.S. at 255 (citing *Adickes v. S.H. Kress & Co*., 398 U.S. 144, 158-59 (1970)), neither conclusory allegations nor unsubstantiated assertions will satisfy the non-movant's summary judgment burden. *Ramsey v. Henderson*, 286 F.3d 264, 269 (5th Cir. 2002); *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir. 1992).  "[C]onclusory statements are not competent evidence to defeat summary judgment."  *See Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 345 (5th Cir. 2007).

The party that moves for summary judgment bears the initial burden of showing that there is an absence of genuine issue of material fact. *Celotex Corp.,* 477 U.S. at 323. Rule 56(b) permits the movant to demonstrate this "with or without supporting affidavits." FED. R. CIV. P. 56(b).  Indeed, "the burden on the moving party may be discharged by 'showing' -- that is, pointing out to the district court -- that there is an absence of evidence to support the nonmoving

3

party's case." *Celotex Corp.*, 477 U.S. at 325 (finding no express or implied requirement in *Rule 56* that the moving party support its motion with affidavits or other similar materials *negating* the opponent's claim).

Once the movant makes this showing, the non-movant must then direct the court's attention to evidence in the record sufficient to establish that there is a genuine issue of material fact for trial. *Celotex Corp.*, 477 U.S. at 323-24. Courts must "resolve doubts in favor of the nonmoving party and make all reasonable inferences in favor of that party." *Dean v. City of Shreveport,* 438 F.3d 448, 454 (5th Cir. 2006); *Walker v. Sears, Roebuck & Co.,* 853 F.2d 355, 358 (5th Cir. 1988). However, the "opponent must do more than simply show . . . some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986). Instead, the non-movant must show that the evidence is sufficient to support a resolution of the factual issue in his favor.  *Anderson*, 477 U.S. at 249.

The non-movant achieves this only by identifying "specific evidence in the record and … articulat[ing] the precise manner in which that evidence supports his or her claim." *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998). "[U]nsubstantiated assertions are not competent summary judgment evidence." *Celotex*, 477 U.S. at 324.

### III.   DISCUSSION

### A.   OVERVIEW

Plaintiff presents two claims: (1) racial discrimination and (2) retaliation in violation of Title VII, based on employment decisions applied to her after she initiated a Title VII complaint with the USPS' internal EEO office. Pl.'s Compl. at 6.

It is undisputed that two years before the events giving rise to this lawsuit, Fuentes filed a lawsuit against the USPS claiming that she was discriminated against as a Latina because the

USPS Dallas office favored placing African Americans in management.[2] The full weight of Cothran's contention of racial discrimination ultimately rests on a purported connection between Fuentes' belief that African-Americans are given advantages within USPS because of race, and managerial actions Fuentes took in supervising Cothran. The inference of racial discrimination by Fuentes against Cothran based on Fuentes' lawsuit is the center of Cothran's case. The Court now turns to address the details of the case within the proper framework.

### B.   RACIAL DISCRIMINATION

The Court must first determine whether there is direct evidence of discrimination or whether the only evidence requires inference to establish discriminatory intent. *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802-05 (1973).  The Fifth Circuit has defined "direct evidence" as evidence which, if believed, proves the fact in question without inference or presumption.  *Fabela v. Socorro Indep. Sch. Dist.,* 329 F.3d 409, 415 (5th Cir. 2003); *West v. Nabors Drilling USA, Inc.,* 330 F.3d 379, 384 n.3 (5th Cir. 2003) (quoting *Sandstad v. CB Richard Ellis, Inc.,* 309 F.3d 893, 897 (5th Cir. 2002)).  If a plaintiff can present direct evidence of retaliation, the plaintiff is not required to address the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973); *see also Bisong v. Univ. of Houston,* 493 F.Supp.2d 896, 905 (S.D. Tex. 2007).  Here, Plaintiff essentially concedes that her case is circumstantial.[3]  Accordingly, the Court now applies the *McDonnell Douglas* burden shifting framework to the evidence of this case.

---

[2] *Fuentes v. Potter,* 3:04-CV-01859-AH, was filed in this district on August 26, 2004. Summary judgment was obtained by Potter against Fuentes on February 28, 2007, and affirmed in a one page opinion by the Fifth Circuit on January 7, 2008.

[3] "A reasonable jury could infer that these [employment] actions were because of Ms. Cothran's race ...." Pl.'s Brief at 2. Plaintiff's Brief argues solely from inference, e.g. Pl.'s Brief at 20-21, and within the burden-shifting framework of *McDonnell Douglas*. E.g., Pl.'s Brief at 16-17.

The *McDonnell Douglas* burden-shifting has three phases.  See *Rios v. Rossotti,* 252 F.3d 375, 378 (5th Cir. 2001). In the first step, a plaintiff must establish a prima facie case of discrimination by showing that: (1) she is a member of a protected class, (2) she was qualified for the position, (3) she suffered an adverse employment action, and, (4) in the case of disparate treatment, that she was treated less favorably than similarly situated employees of a different race.  *Dodge v. Hertz Corp.,* 124 Fed. Appx. 242, 244 (5th Cir. Tex. 2005); *Okoye v. Univ. of Tex. Housto0n Health Sci. Ctr.*, 245 F.3d 507, 513 (5th Cir. 2001) (quoting *Shackleford v. Deloitte & Touche, LLP*, 190 F.3d 398, 404 (5th Cir. 1999)) (other citations omitted).

If a plaintiff meets this burden, the defendant must then articulate one or more "legitimate, non-discriminatory reason(s)" for the adverse action it took. *McDonnell Douglas,* 411 U.S. at 802-03; *Rios*, 252 F.3d at 378.  If defendant meets this burden, plaintiff must then offer sufficient evidence to create a genuine issue of material fact either (1) that defendant's reason is not true, but is instead a pretext for discrimination; or (2) that defendant's reason, while true, is only one of the reasons for its conduct, and another motivating factor is the plaintiff's protected characteristic.  *McDonnell Douglas*, 411 U.S. 804-06; *Rachid v. Jack In The Box*, 376 F.3d 305, 312 (5th Cir. 2004).

Plaintiff's protected status under Title VII, and her general qualifications for her position, are unchallenged. However, Defendant does deny that she was subject to an adverse employment action and denies that she suffered disparate treatment compared to similarly situated employees of a different race.

### 1.     <u>Prima facie showing</u>

For Title VII purposes, an adverse employment action results only from ultimate employment decisions affecting issues such as compensation, promotion or demotion, hiring or

discharge. *Alaniz v. Zamora-Quezada,* 591 F.3d 761 (5th Cir. Tex. 2009); *Mota v. Univ. of Tex. Houston Health Sci. Ctr.,* 261 F.3d 512, 520 (5th Cir. Tex. 2001); *see also Clayton v. Rumsfield,* 106 Fed. Appx. 268, 270 (5th Cir. 2004). Here, Cothran offers as adverse employment actions:  a refusal of Fuentes to allocate an office-wide "blitz" on third-party claims that Cothran was assigned; Fuentes' decision to assign Cothran certain alpha files; Fuentes' decision to assign two clerks to assist Cothran with managing her case load; Fuentes' decision to have the clerks assess Cothran's work and report back to Fuentes; Fuentes' directing the production of a spreadsheet detailing Cothran's performance; Fuentes' "threaten[ing]" to give the report to the Dallas District Manager; and Cothran's complaints about Fuentes and another entering her workspace, going through her files, and rearranging them, while Cothran was on vacation. *Id.* at 3-9.

The incidents of which Cothran complains do not rise to the level of an adverse employment action for purposes of a racial discrimination claim. *See e.g. Clayton* 106 Fed. Appx. at 270 (Actions such as possible spying, a non-promotable rating, scrutinization, a letter of warning, rejection of plaintiff's request to have a third person of her choosing present at weekly meetings with her supervisors, transfer to another work site, and exclusion and unfair treatment are not ultimate employment actions). However, even if she had established a prima facie case, Defendant has stated legitimate reasons for all of the actions of which she complains, to which the Court now turns, addressing Defendant's burden.

### 2.    Race Neutral Reasons

Defendant has stated legitimate reasons for the actions of which Cothran complains. For example, in the Spring of 2006, Fuentes ordered all her personnel to perform a "blitz" effort to clear out backlog in handling claims, which eliminated the backlog in three days. Def.'s App. 25, 28, 33, 117, 125-126. Subsequently, Cothran asked Fuentes if a "blitz" effort be could done

on her third-party cases to eliminate backlog in that area. Def.'s App. 25, 27, 31-32, 126. That request drew Fuentes' focus on those cases. Def.'s App. 126. 132-142. Fuentes determined that action was needed immediately – however, Cothran was on leave in 2006 on May 11, and during May 16-18, May 22-26, May 30 to June 12, on June 23, and during August 7 through 11. Def.'s App. 120, 126, 143-144.

Consequently, Fuentes brought other employees into the effort at clearing out the backlog of third-party cases during Cothran's absences. Def.'s App. 26, 34-35, 126. Cases in which the statute of limitations had run were removed from Cothran's files and closed out. Def.'s App. 26, 36-37, 39-40, 126, 148, 151-152. Other third-party files had been rearranged. Def.'s App. 26, 38-40. Cothran contends that "employees of other races did not have their personal space violated ....." in this manner. Pl.'s Compl. 4, ¶ 40; *see also* Def.'s App. 26, 41-43, 47. However, it is undisputed from Cothran's own pleadings and evidence, as stated above, that no other employees had third-party files and that Cothran had *requested* assistance from others in clearing up the third-party file backlog. Since she requested they get involved with the files, they had to enter her personal space to obtain the files and assist with the backlog.

With the record and all arguments in view, the Court concludes that Defendant has met its burden to establish legitimate reasons for the actions of which Cothran complains.

### 3.    <u>Pretext</u>

The Court turns to Cothran's proffered reasons demonstrating Defendant's race neutral explanations are pretext. Def.'s Brief at 25-26. The evidence offered consists primarily of representations in her deposition and certificates awarded her for performance. Pl.'s App. 1-99.

First, Cothran claims that Fuentes must have developed her own spreadsheet of the third-party caseload situation, and spoken of showing this to another supervisor, in order to intimidate

8

her. *Id.* at 25. The sole basis for the assertion that this shows pretext is that there is "an existing nationwide database that tracks this exact information." *Id.*  That Fuentes prepared her own spreadsheet when a nationwide database of the same data exists simply does not establish a *genuine* issue of fact regarding pretext.

Likewise, Defendant again raises the issue of Fuentes' previous lawsuit from which, she contends, "a jury could infer that Ms. Fuentes has a chip on her shoulder against African-American employees." *Id.* at 26. She alleges that disparate treatment between Plaintiff and non-African-American employees strengthens the inference of a "chip of her shoulder," again citing Fuentes' entry into Plaintiff's workspace to work on the third-party file backlog.  Because two non-African-American employees were on vacation at the same time as Plaintiff, and Fuentes did not enter their workspace, Plaintiff claims this is disparate treatment demonstrating pretext. *Id.*  But given the described circumstances, including her own acknowledgment of a request for Fuentes to alleviate her backlog problem with third-party files – contained only within her space, this fails to raise a genuine issue of material fact on pretext.

Finally, she claims that her work load increased while the workload of others decreased. However, she offers no evidence of this allegation beyond her assertion. Indeed another analyst, whose affidavit was presented by Plaintiff, notes that the rotation system to which Plaintiff alludes applied equally to all analysts. Paulissen Aff. at 1 (Pl. Resp. App. at 155).

Affording Plaintiff all reasonable inferences, Defendant is entitled to judgment as a matter of law on this claim.  She has failed to produce evidence that she suffered an adverse employment action sufficient to establish a prima facie case. Even had she established a prima facie case, Defendant has met its burden to articulate legitimate reasons for its actions, and

9

Plaintiff has not met her burden to establish a genuine issue of pretext.

    B.    RETALIATION

    1.    Legal Background

    In establishing a case of retaliation, a plaintiff should show that (1) she engaged in an activity protected by Title VII, (2) the defendant knew of the exercise of her civil rights, (3) the defendant thereafter took an employment action that was adverse to the plaintiff, and (4) there was a causal connection between the protected activity and the adverse employment action. *Wrenn v. Gould,* 808 F.2d 493, 500 (5th Cir. 1987) (citations omitted).

    The alleged retaliatory conduct may be proved by either direct or circumstantial evidence.  *McCoy v. City of Shreveport,* 492 F.3d 551, 556 (5th Cir. 2007). Plaintiff's argument is based explicitly on inference. Accordingly, the Court applies the *McDonnell-Douglas* framework, which applies in retaliation cases in much the same manner as discrimination cases. Under the first prong, a plaintiff must first establish a prima facie case of retaliation, demonstrating that (1) she engaged in protected activity; (2) an adverse employment action occurred; and (3) that there is a causal link between the protected activity and the adverse action. *Raggs v. Miss. Power & Light Co.,* 278 F.3d 463, 471 (5th Cir. 2004).  If plaintiff meets this burden, the defendant must then articulate any "legitimate, non-discriminatory reason(s)" for the adverse action it took.  *Rios*, 252 F.3d at 378.  If defendant meets this burden, plaintiff must then offer sufficient evidence to create a genuine issue of material fact either (1) that defendant's reason is not true, but is instead a pretext for discrimination; or (2) that defendant's reason, while true, is only one of the reasons for its conduct, and another motivating factor is the plaintiff's protected characteristic.  *Rachid v. Jack In The Box*, 376 F.3d 305, 312 (5th Cir. 2004).

It is uncontested that Cothran took a protected action and that Fuentes knew of the action. As with the discrimination claim, the parties conflict as to whether an adverse employment action followed and, if it did, whether there is a causal link between it and the protected activity.

### 2.      Adverse Employment Action

The "typical examples of ultimate employment decisions that can support a claim of retaliation include 'hiring, granting leave, discharging, promoting, and compensating.'" *Hernandez v. Crawford Bldg. Material Co.,* 321 F.3d 528, 531 (5th Cir. Tex. 2003) (quoting Dollis v. Rubin, 77 F.3d 777, 781-82 (5th Cir. 1997)). Cothran's claim of retaliation rests on an evaluation that affected her compensation and on certain leave request denials that she contrasts with specific grants of request to others.

Cothran filed a claim with the EEO of the USPS on November 21, 2006. Def.'s App. 158-161.[4] On November 29, 2006, Fuentes recorded Cothran's performance evaluation, which had an impact on her level of pay. Pl.'s Compl. at 4-5; Pl.'s Brief at 22. USPS employees like Cothran were annually provided a "performance plan" upon which their performance was graded a year later. *See* Def.'s App. 24, 50, 56, 117, 173.

An African-American manager named Freddie Evans, Fuentes' immediate predecessor as Cothran's supervisor, drew up her 2006 performance plan in November, 2005. Def.'s App. 24, 56, 117, 127, 170-171. The plan set targets in four core areas of performance. Within each area, employees were scored 0 (non-contributor), 6 (contributor), 11 (high contributor), or 14 (exceptional contributor). In November, 2006, Fuentes evaluated eight employees, including Cothran. Three received overall ratings of six. Five, including Cothran, received overall ratings

---

[4] The complaint was later dismissed for failure to state a claim. Def.'s App. at 262-66.

of five. Def.'s App. 60, 111-112, 127, 149, 198, 203, 208, 213, 217-218, 222.

Defendant concedes this cost Cothran $285 in salary in 2007. Def.'s Brief at 8. The standard for adverse employment action is more broad in retaliation cases than in discrimination cases. *See Burlington Northern & Sante Fe Ry. v. White,* 548 U.S. 53 (2006). Actionable retaliation includes "employer actions that would have been materially adverse to a reasonable employee" and that are "harmful to the point that they could well dissuade a reasonable worker from making or supporting a charge of discrimination." *Id.* at 57. A loss in pay certainly qualifies. *Id.*

Additionally, denial of leave is an adverse employment action for purposes of reviewing a retaliation claim. *Mota v. Univ. of Tex. Houston Health Sci. Ctr.,* 261 F.3d 512, 522 (5th Cir. Tex. 2001). As discussed below, it is undisputed that Defendant denied leave to Cothran after she had filed her EEO claim.

Plaintiff has met her burden of establishing adverse employment actions, and the Court turns to the issue of a causal link.

### 3.    Causal Link - Performance Evaluation

A causal link is necessary to establish a prima facie case. The employee must show that the action complained of would not have occurred "but for" the protected activity. *Mota*, 261 F.3d 512, 519 (5th Cir. Tex. 2001); *Seaman v. CSPH, Inc.,* 179 F.3d 297, 301 (5th Cir. 1999).

Cothran's argument is that this link is established by the proximity in time between the day Fuentes learned of Cothran's complaint to the EEO (November 27, 2006) and the day Fuentes filed Cothran's performance evaluation (November 29, 2006). Pl.'s Brief at 29-30. As Plaintiff notes, the timing of an adverse employment action "can be a significant, although not

necessarily determinative, factor." *Id.* at 29 (quoting *Mayberry v. Vought Aircraft Co.,* 55 F.3d

1086, 1092 (5th Cir. 1995)). "Close timing between an employee's protected activity and an

adverse action against [her] *may* provide the 'causal connection' required to make out a prima

facie case." *Swanson v. Gen. Servs. Admins.,* 110 F.3d 1180, 1188 (5th Cir. 1997) (emphasis

added). *See also Shirley v. Chrysler First, Inc.,* 970 F.2d 39, 43 (5th Cir. 1992) (noting that

temporal proximity is just one of the elements in the entire calculation); *Strong v. University*

*Healthcare Systems, L.L.C.,* 482 F.3d 802, 808 (5th Cir. 2007).

Plaintiff offers a documentary record that includes certificates for performance, but fails

to meet her burden to establish a genuine issue that there was a link between the protected action

and her scores. Pl.'s App. 70-99. Even if she had established a prima facie case of causation,

Defendant offers a substantial record of reviews which provide legitimate reasons for her scores

which Defendant contends are based on an objective and detailed assessment of her

performance, expectations, and history with the USPS. Def.'s App. 125-130, 162-192. Defendant

further rebuts any inferences rising from the proximity of the evaluation to Fuentes' knowledge

of the EEO complaint. November was the month in which performance evaluations were entered

in the office. Def.'s App. 175-192. Fuentes was directed by her supervisor to enter the ratings no

later than November 24, 2006. Def.'s App. 116, 127, 165-67.  She entered all of her supervised

employees' ratings on the same day as Cothran's, with the exception of one person. Def.'s App.

63-67, 126-127, 145-147, 194-196, 199-201, 204-206, 209-211, 214-216, 219-221).

 Against this, Cothran places particular emphasis on the fact that she received a zero

score in the category of rating for "periodic rolls" in the November, 2006 evaluation. The

category assigned a group target of production to each individual depending on the expectation

from that individual. Freddie Evans, Cothran's previous supervisor, had given Cothran the core requirement of an office-wide reduction of periodic rolls cases by at least 5 percent on the year for which Cothran would then obtain a six rating.

Because the reduction was only 1.5 percent, Cothran received a zero rating. Several others had been given a lower target and therefore received a score of six, two of whom were African-American, one Hispanic-American, and one Caucasian. Def.'s App. 52, 200-210, 220. Significantly, because this score was based on two factors (the individual's assigned goal for office production, and the production of the office as a whole), Fuentes could not have retaliated with the score, as it was the result of a mathematical formula, independent of her judgment, and established by a previous supervisor. Def.'s App. 50-51, 127, 170.

Cothran's deposition testimony is that *everyone* else in her unit received a six rating, with her receiving the only zero. Pl.'s App. 26, 27-28. This self-serving statement again is contradicted by documentation showing Sherry Wilson (a Caucasian) had also been assigned a 5 percent reduction goal, and consequently received as zero rating as well. Def.'s App. 57-59, 128, 145-46, 150.

Beyond this allegation, Cothran claims that Denise Cameron, Fuentes' supervisor, told Cothran she should have received a six rating in the periodic rolls category because the unit received a six rating. Pl.'s App. 30-32. Cothran represents that Cameron was going to check into the matter. *Id.* Cothran formally appealed her rating to Cameron. *Def. Mot. App.* 226-230. And, Cameron denied her appeal. *Id.*

Cothran argues that this articulation of legitimate, non-retaliatory reasons for the actions taken is pretextual. Def.'s Brief at 26-28. Again, the sole evidence cited are Cothran's own

14

representations. *Id.* She emphasizes that the "Defense tries to confused the court by providing similarly situated employee's overall ratings, when Cothran's complaint is actually based on the individual rating for periodic rolls." *Id.* at 26. However, as discussed above, Defendant did provide the Court with the individual ratings and a cogent explanation for how the rating system worked for each individual including Cothran. Cothran's bare assertion that the documentation and explanations provided simply are not true does not raise a genuine issue of pretext. *See Bugos v. Ricoh Corp.*, 2008 WL 3876548, at *4 (5th Cir. 2008) (speculation or subjective beliefs insufficient to prove protected characteristic played a role in adverse employment action).

### 4. <u>Causal Link - Leave Decisions</u>

Turning to the leave issue, Plaintiff alleges her requests for and times on leave were handled differently than those of non-African-American employees after she filed her EEO complaint. Pl.'s Brief at 22-24. Most seriously, she notes that her FMLA leave was marked as absent-without-leave, which was then reversed as being against USPS policy. *Id.* This is the type of action that could be considered by a finder of fact to be an adverse employment action in a retaliation case. *See e.g. LeMaire v. Louisiana,* 480 F.3d 383, 390 (5th Cir. 2007). The fact the action was remedied does not extinguish a retaliation claim. *See Burlington Northern,* 548 U.S. at 72.

However, Plaintiff's argument as to the third prong, causal link, depends solely on proximity – the denial occurred "less than two months after Cothran's protected activity." Pl.'s Brief at 25; *see* Pl's App. at 41. The relative impact of proximity has been discussed above.

Even if a prima facie case had been established, however, when the Court turns to the next stage of the analysis, Defendant provides legitimate reasons for the error through a

discussion of her history of leaves and absences. *See* Def.'s Brief, 9-14. Perhaps most critically, it was thought at the time that Cothran had not worked enough hours in the preceding twelve months to be eligible for FMLA leave. Def.'s App. 128, 168, 272. When the error was discovered, the matter was rectified. Def.s' App. 121, 128, 276-79.

Cothran argues that this articulation of legitimate, non-retaliatory reasons for the actions taken is pretextual. Def.'s Brief at 26-28. She claims that Fuentes must be lying about her discovery that she had been simply mistaken in refusing FMLA leave as a matter of policy. She cites her own deposition, in which she asserts that the woman Fuentes says first alerted her to the mistake was not in charge of approving FMLA requests. Without support that could have been easily obtained in discovery, this statement alone is insufficient to create a genuine issue carrying her burden as to the pretextual prong.  *See Bugos v. Ricoh Corp., supra.*

Similarly, she claims Fuentes lied on another occasion, and that this establishes an issue of pretext in Fuentes' actions. Pl.'s App. at 27. In that instance, Carolyn Jacobs, an African-American co-employee was on leave along with another when Cothran sought leave. *Id.* Fuentes denied it because of an office policy that only two of the specialists could be out on leave, and stated that Jacobs' leave was approved. *Id.* Plaintiff stated in her deposition that this was a lie because Jacobs was on unscheduled sick leave. Pl.'s App. at 158. However, Defendant's evidence documents with out dispute that the leave had been scheduled, approved, and Jacobs had signed the leave calendar before Cothran sought her leave officially. Def.'s App. 313, 317.

Summarily, an examination of the record does not reveal production of evidence sufficient to establish a *genuine issue* of material fact establishing that Plaintiff has carried her burden as to pretext.

IV.    **CONCLUSION**

Based on the foregoing, the Court concludes that summary judgment is appropriate as to all claims made in this case.

V.    **ORDER**

Defendant's Motion for Summary Judgment is **GRANTED**.  As such, Plaintiff's Motion for Summary Judgment is **DENIED** as moot.  The Joint Motion to Stay is also **DENIED** as moot.  It is **ORDERED** that Plaintiff's claims are dismissed.

Signed this 22d day of March, 2010.


Reed O'Connor
**UNITED STATES DISTRICT JUDGE**